**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**In re:**

**The Intown Companies, Inc.**          **CASE NO.: 14-50374-KKS**
                                        **CHAPTER 11**

      **Debtor-In-Possession.**

_____/


**DEBTOR-IN-POSSESSION'S**
**COMBINED DISCLOSURE STATEMENT**
**AND CHAPTER 11 PLAN OF REORGANIZATION**


Dated: January 8, 2017




Law Offices of Jason A. Burgess
1855 Mayport Road
Atlantic Beach, Florida  32233
(904) 372-4791
(904) 853-6932 (facsimile)

Attorneys for Debtor-In-Possession

## <u>INTRODUCTION</u>

The Intown Companies, Inc., a Florida Corporation (the "**DIP**"), in its capacity as the Debtor and Debtor-In-Possession in this case, proposes the following plan of reorganization to resolve outstanding claims against the Debtor in this case under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

THE INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN (THE "**PLAN**") IS INCLUDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THIS PLAN. THE INFORMATION CONTAINED IN THIS PLAN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THIS PLAN.  NO ENTITY, OTHER THAN THE DIP, MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, REGARDING THIS PLAN OR THE SOLICITATION OF ACCEPTANCES OF THIS PLAN.

The DIP is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Subject to certain restrictions and requirements set forth in this Plan and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, The DIP reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms of this Plan, the Confirmation Order, and the Bankruptcy Code.

All holders of claims and interests are encouraged to read this Plan and the accompanying materials in their entirety before voting to accept or reject this Plan.  No materials, other than the exhibits, appendices, or schedules attached to or referred to in this Plan have been approved by the DIP in soliciting acceptances of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF
## <u>INTERPRETATION AND COMPUTATION OF TIME</u>

**1.1     Defined Terms**

As used in this Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**a.      "Administrative Claim**" means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date to preserve the Estate and operate the business of the Debtors, including Claims based on liabilities incurred by the Debtors in the ordinary course of their business (b)

1

Professional Fee Claims (including Professional Fee Claims by the Debtors' counsel in the maximum amount of $5,000); and (c) U.S. Trustee Fees.

**b.** **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

**c.** **"Allowed"** means a Claim that is allowed pursuant to the terms of this Plan.

**d.** "**Allowed Claim"** means an Allowed Claim in the particular Class described in this Plan.

**e.** **"Assets"** means all property of the Estate within the meaning of section 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

**f.** **"Bankruptcy Case"** means the Chapter 11 case pending for the Debtor in the Bankruptcy Court.

**g.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §101-§1532, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

**h.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida.

**i.** **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

**j.** **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

**k.** **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Case.

**l.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**m.** **"Cash"** means the legal tender of the United States of America.

**n.** **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**o.** **"Class"** means a class of Claims as described in Article II.

**p.**    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**q.**    **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**r.**    **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of this Plan, including all hearings under Section 1129 of the Bankruptcy Code, as such hearings may be continued from time to time.

**s.**    **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**t.**    **"Creditor"** means the holder of a Claim.

**u.**    **"Debtor"** has the meaning set forth in the introductory paragraph of this Plan.

**v.**    **"Distribution"** shall mean funds to be paid or instruments to be issued to holders of Claims and Interests pursuant to this Plan.

**w.**    **"Distribution Date"** shall mean the dates upon which Distributions may be made pursuant to this Plan.

**x.**    **"Effective Date"** means the fifteenth (15th) business day following the date of the entry of the order of confirmation.

**y.**    **"Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

**z.**    **"Equity Claim"** means a legal, equitable or contractual Claim arising from any share or other stock ownership interest in the Debtor.

**aa.**    **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

**bb.**    **"Executory Contract or Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code.

**cc.**    **"Final Order"** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review

or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Liquidating Agent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of this Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Liquidating Agent may waive such requirement in accordance with this Plan with Court approval.

**dd.** **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Cure Amount Claim, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

**ee.** **"Interest"** means:  (a) any share or other ownership interest in the Debtor, whether or not transferable or denominated "stock," or similar security and (b) any Equity Claim.

**ff.** **"Petition Date"** means November 11, 2014.

**gg.** **"Post-Confirmation Administrative Claim"** shall mean a Claim for services rendered or expenses incurred after the Effective Date in connection with this Bankruptcy Case.

**hh.** **"Plan"** means this Combined Disclosure Statement and Chapter 11 Plan of Reorganization filed by the DIP, as the same may be amended, modified or supplemented.

**ii.** **"Priority Claim"** means a Claim against the Debtor that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

**jj.** **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**kk.** **"Professional"** means any professional employed in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b)(4) of the Bankruptcy Code.

**ll.** **"Professional Fee Claims"** mean the Claims of (a) any Professional in the Bankruptcy Case pursuant to sections 330 or 1103 of the Bankruptcy Code or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

**mm.**    **"Property"** means the real and personal property located at 4810 West Highway 98, Panama City, Florida.

**nn.**    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**oo.**    **"Secured Claim"** means a Claim against the Debtor for extensions of credit to the Debtor that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

**pp.**    **"Substantial Consummation"** shall mean that this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**qq.**    **"Tax"** means: any  net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

**rr.**    **"U.S. Trustee Fees"** means all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**ss.**    **"Excess Cash Payment"** means as described on the attached Exhibits.

## 1.2    Rules of Interpretation and Computation of Time

### a.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document means such document as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (iv) any reference to a Creditor includes that Entity's successors and assigns; (v) all references in this Plan to Sections and Articles are references to Sections and Articles of this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) subject to the provisions of any  contract, instrument,

release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

### b.    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## CLASSES OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section 3.1, have not been classified and thus are excluded from the Classes. A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**Class 1** Claim of Panama Assets, LLC

**Class 2** Property Tax Claims

**Class 3** Trade Creditors

**Class 4** Insider Claims

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

### 3.1    Unclassified Claims

### a.    Payment of Administrative Claims

### (i)    Administrative Claims in General

Except as otherwise provided herein or unless otherwise agreed by the holder of an Administrative Claim and the Debtor-In-Possession, each holder of an Allowed Administrative Claim will receive from the Debtor-In-Possession, in full satisfaction of its Administrative Claim, cash equal to the allowed amount of such Administrative Claim either (A) on the Distribution Date or (B) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which (i) an order allowing such

administrative Claim becomes a Final Order or (ii) a stipulation of amount is executed by the Debtor-In-Possession and the holder of the Administrative Claim.

### (ii)    U.S. Trustee Fees

On the Distribution Date, the Debtor-In-Possession shall pay to the United States Trustee the United States Trustee Fees then due and owing and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating cash disbursements for all relevant periods. Notwithstanding anything contained in this Plan to the contrary, the Debtor-In-Possession shall further pay the United States Trustee Fees to the United States Trustee after the Effective Date, for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Bankruptcy Code. The Debtor-In-Possession shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursements for the relevant periods.

### (iii)    Ordinary Course Liabilities

Allowed Administrative Claims based on liabilities incurred by the Debtor-In-Possession in the ordinary course of its business will be paid by the Debtor-In-Possession pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims.

### (iv)    Bar Dates for Administrative Claims

Except as otherwise provided herein, requests for payment of Administrative Claims must be filed and served on the Debtor-In-Possession in accordance with Bankruptcy Rule 3071-1. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Debtor, or their Assets and such Administrative Claims will be deemed waived and released as of the Effective Date.

### b.    Payment of Priority Tax Claims

### (i)    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall be paid as set forth in the bankruptcy code.

### (ii)    Other provisions regarding treatment of Priority Tax Claims

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim. The holder of an Allowed Priority Tax Claim will not  be entitled to assess or attempt to collect such penalty from the Debtor or the Debtor's

Assets.

**3.2    Classes of Claims**

    **a.    Class 1 (Panama Assets, LLC)**

Panama Assets, LLC's claim was determined by the Court to be $3,713,187 (Doc. No. 287).  The Debtor will pay the full claim, minus already received adequate protection payments (totaling through November 2016 in the amount of $278,375.17) plus other scheduled payments up to the Effective Date as follows:

The Debtor will make monthly principle and interest payments, based upon $2,702,035.33 amortized over twenty-five (25) years with 5.50% interest, in the amount of $16,593.00.  Additionally the Debtor will pay a twenty-five (25) percent Excess Cash Payment to Panama Assets, LLC as a principle payment consistent with the attached Exhibit.  All amounts due and owing on the secured portion of the claim shall come due after sixty months from the first payment under this Plan if the Debtor does not exercise the below extension rights.

The Debtor shall have the right to two (2) additional one-year extensions of the balloon by Mr. Melton Harrell making a $25,000.00 principal payment to Panama Assets, LLC for the first year extension and a $50,000.00 principal payment to Panama Assets, LLC for the second year extension.  Each extension along with its corresponding principal payment must be executed on or before thirty days prior to the expiration of the then current balloon period.

Panama Assets, LLC will be allowed a unsecured claim in the approximate amount of $690,803.32.  Upon confirmation and on the Effective Date, this portion of the Panama Assets claim shall become recourse and hold the same rights and privileges of the Panama Assets secured claim.

This portion of the claim shall receive monthly interest only payments at the federal judgment rate that is in effect on the first date set for Confirmation.  All amounts due and owing on the unsecured portion of the claim shall come due at the same time as the above secured portion, including extension periods if executed.

    *Voting: Class 1 is impaired and therefore is entitled to vote to accept or reject this Plan.  Class 1 retains all secured rights to the same extent it held prior to the Petition Date.*

    **b.    Class 2 (Property Tax Claims)**

Property Tax Claims in Bay County, Florida for 2012, 2013, and 2014 real estate taxes shall be allowed the full amount of their outstanding claims, $121,934.62 as of December 31, 2016.

2012 Real Estate Taxes (Bill 647640-I) shall continue to be granted interest on the total amount owed on the Effective Date of the Plan at the certificate rate of 0.25%. The Debtor will pay interest only payments towards the 2012 Real Estate Taxes for months one (1) through thirty-six (36). The Debtor will pay principal and interest payments in months thirty-seven (37) through sixty (60) based upon the full outstanding balance with the certificate rate of interest amortized over twenty-four (24) months.

2013 Real Estate Taxes (Bill 674040-I) shall continue to be granted interest on the total amount owed on the Effective Date of the Plan at the certificate rate of 0.25%. The Debtor will pay interest only payments towards the 2013 Real Estate Taxes for months one (1) through thirty-six (36). The Debtor will pay principal and interest payments in months thirty-seven (37) through sixty (60) based upon the full outstanding balance with the certificate rate of interest amortized over twenty-four (24) months.

2014 Real Estate Taxes (Bill 676950) shall continue to be granted interest on the total amount owed on the Effective Date of the Plan at the statutory rate of 18%. The Debtor will pay principal and interest payments in months one (1) through thirty-six (36) based upon the full outstanding balance with the statutory rate of interest amortized over thirty-six (36) months.

***Voting: Class 2 is impaired and therefore entitled to vote to accept or reject this Plan. Class 2 retains all secured rights to the same extent it held prior to the Petition Date.***

### c.    Class 3 (Trade Creditors)

Allowed General Unsecured Claims/Trade Creditors, estimated at $22,515.00, will be paid 100% of their allowed claims over five (5) years with interest calculated at the federal judgment rate that is in effect on the first date set for Confirmation in monthly payments beginning on the first day of the first full month following the Effective Date.

***Voting: Class 3 is impaired and therefore entitled to vote to accept or reject this Plan.***

### d.    Class 4 (Insider Claims)

All Insider Claims will receive no distribution under this Chapter 11 Plan.

***Voting: Class 4 is impaired and therefore entitled to vote to accept or reject this Plan.***

**ARTICLE IV**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

**4.1** *All Impaired Classes of Claims Entitled to Vote*

All Classes are impaired under this Plan. Therefore, each class is entitled to vote to accept or reject this Plan.

**4.2** *Method of Distribution under this Plan*

(a) Subject to Rule 9010, and except as otherwise provided herein or by court order, all Distributions under this Plan shall be made by the Debtor-In-Possession to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Effective Date unless the DIP has been notified in writing of a change of address, including by the filing of a Proof of Claim, or an assignment of Claim, by such holder that provides an address different from the address reflected on the Schedules.

(b) Any payment of Cash made by the Debtor-In-Possession pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c) Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) Any Distributions of Cash by the Debtor-In-Possession under this Plan that are unclaimed by a holder of an Allowed Claim for a period of ninety days after the Final Distribution Date shall be paid over by the Liquidating Agent to the Court, in accordance with Local Rule of Bankruptcy Procedure 3011-1(B). In no event does the Debtor-In-Possession have any obligation to investigate or attempt to locate the holders of such claims.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

**5.1 Means.** The current operations of the Debtor-In-Possession will pay creditors of the Debtor under this plan from income generated through the operation of the business. Additionally, the Debtor's management company, American Motel Management, Inc., has agreed to collect no management fee for the first year following the effective date of the Plan and to reduce their monthly management fees for years two (2) through five (5) to $3,000.00 monthly. All uncollected management fees shall accrue. American Motel Management, Inc. will execute a Management Company Support Agreement similar to the attached Exhibit. Additionally Mr. Melton Harrell has agreed to infuse $100,000.00 on the Effective Date of the Plan into the Debtor's operating account and has also agreed to additional protections that will be as laid out in the attached Plan Support Agreement. The Equity Holders and insiders have also agreed to not take any dividend, payment,

distribution or loan from the Debtor for the first three years as well as agreed to additional limitations as shown on the attached Equity Support Agreement.

**ARTICLE VI**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1    Assumed Executory Contracts and Unexpired Leases**

**N/A**

**(b)** The Debtor has expressly rejected the following executory contracts and/or unexpired leases consistent with the respective orders.

| Case No. | Other Party | Description of Contract/Lease | Doc. No. |
|----------|-------------|-------------------------------|----------|
| N/A | | | |

**(c)** The Debtor expressly rejects any other lease/executory contract that has not already been either assumed or rejected.

**ARTICLE VII**
**GENERAL PROVISIONS**

**7.1    Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when the terms defined or construed in the Code are used in this Plan.

**7.2    Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**7.3    Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of each entity.

**7.4    Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.5    Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII
## DISCHARGE

**8.1    Discharge.** On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE IX
## OTHER PROVISIONS

**9.1    Payments.** Payments to the various Classes under this Plan shall commence on the first (1st) day of the month after the date that the Plan becomes final and non-appealable unless otherwise specifically stated with respect to treatment of each particular class.

**9.2    De Minumus Distributions.** Ratable distributions to holders of Allowed Claims will not be made if such distribution will result in a distribution amount of less than $50.00, unless a request thereto is made in writing to the Debtor.

**9.3    Delivery of Distributions.** Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made by mail (1) at the address of each such holder as set forth on the proofs of claim filed by such holders, (2) at the address set forth in any written notice of address change delivered to the Debtor after the date of any related proof of claim; or (3) at the address reflected in the Schedule of Assets and Liabilities filed by the Debtor if no proof of claim is filed and the Debtor has not received a written notice or address change. If any Claimholder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Debtor is notified in writing of such Claimholder's then current address.

**9.4    Exclusive Bankruptcy Court Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, for the following purposes:

**(a)** To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including , without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

**(b)** To ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

**(c)** To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the

rejection, assumption or assumption and assignment of any executory contract or unexpired lease;

(**d**) To consider and approve any modification of this Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(**e**) To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any entity's obligations in connection with the Plan;

(**f**) To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor;

(**g**) To decide or resolve any and all applications motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date or that may be brought by the Debtor after the Effective Date, including claims arising under Chapter 5 of the Bankruptcy Code;

(**h**) To issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. §1142 or provided by the terms of this Plan;

(**i**) To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan; and

(**j**) To enter an order closing this Chapter 11 Case.

**9.5** **Limitation on Jurisdiction.** In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§157 and 1334.

## ARTICLE X
## ALTERNATIVES TO THE PLAN

There is one alternative to the Plan: conversion to a Chapter 7 liquidation case. As discussed more fully below, unsecured creditors will receive substantially more under the Plan than they will receive in a Chapter 7 liquidation.

Liquidation. The alternative is conversion to a Chapter 7 liquidation case. Because the Debtor is proposing to pay creditors 100% of their allowed claims, a Chapter 7 liquidation would therefore not yield any more distribution than is provided under this Plan.

## ARTICLE XI
## TAX CONSEQUENCES OF PLAN

**11.1   General.** The tax consequences of the Plan to the holders of Claims are discussed below. This discussion of the federal income tax consequences of the Plan under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "IRC" or "Tax Code"), is provided for informational purposes only.   While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties. Moreover, the consequences to a holder of Claims may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of taxpayers holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such holders' particular tax situations.   In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular holders of Claims.

**DEBTOR'S BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.  HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES.**

**11.2    Certain U.S. Federal Income Tax Consequences to Holders of Claims.**

**(a) Consequences to Holders of Secured Claims.** The following discussion assumes that each holder of an Allowed Secured Claim holds such Claim as a "capital asset" within the meaning of Section 1221 of the IRC.  If an Allowed Secured Claim remains secured by a lien on the Debtor's Assets, the Holder of such Claim should not recognize a gain or loss except to the extent Collateral securing such Claim is changed, and the change in Collateral constitutes a "significant modification" of the Allowed Secured Claim within the meaning of Treasury Regulations promulgated under Section 1001 of the IRC.  If an Allowed Secured Claim is paid in full in cash, the holder should recognize a capital gain or loss (which capital gain or loss would be a long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its Claim for more than one (1) year) in an amount equal to the amount of cash received over the holder's adjusted basis in the debt instrument(s) underlying its Allowed Secured Claim.  To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

**(b) Consequences to Holders of Priority Claims.** To the extent that the holder of an Allowed Priority Claim receives a distribution under the Plan, such holder should recognize such distribution as ordinary income and submit the appropriate withholdings based on that holder's particular circumstances.

interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

**(b) Consequences to Holders of Priority Claims.** To the extent that the holder of an Allowed Priority Claim receives a distribution under the Plan, such holder should recognize such distribution as ordinary income and submit the appropriate withholdings based on that holder's particular circumstances.

**(c) Consequences to Holders of Unsecured Claims.** To the extent the holder of an Allowed Unsecured Claim receives less than full payment on account of such Claim, the holder of such Claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed Unsecured Claim.

## ARTICLE XII
## SUMMARY AND RECOMMENDATION

The Plan provides for an orderly and prompt distribution to holders of Allowed Claims and the satisfaction of all asserted Claims. Any alternative other than confirmation of the Plan would result in extensive delays and increased administrative expenses resulting in smaller distributions to holders of Allowed Claims proposed under the Plan.

**ACCORDINGLY, THE INTOWN COMPANIES, INC. RECOMMENDS THAT HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN SUPPORT CONFIRMATION OF THE PLAN AND VOTE TO ACCEPT THE PLAN.**

Dated: January  8  , 2017

The Law Offices of Jason A. Burgess, LLC

Submitted by:   */s/ Jason A. Burgess*
Jason A. Burgess
Florida Bar No.: 40757
1855 Mayport Road
Atlantic Beach, Florida 32233
Phone: (904) 372-4791
Facsimile: (904) 853-6932
*Counsel for Debtor-In-Possession*

Melton Harrell

**Exhibits**

A.  Debtor-In-Possession's Trailing 12 Months

B.  Lender's Allowed Claim Balance Projection

C.  Lender's Value in Security Interest Calculation

D.  Debtor's Property Improvement Plan

E.  Melton Harrell's Plan Support Agreement Language

F.  Equity Holders' Equity Support Agreement Language

G.  American Motel Management, Inc.'s Management Company Support

Agreement Language

H.  Debtor-In-Possession's Excess Cash Payment Definition

I.  Debtor-In-Possession's Net Cash Flow Calculation

J.  Debtor-In-Possession's Case Prospective

**Exhibit A**
**(Trailing 12 Months)**

**The Intown Companies, Inc.,**
**Trailing 12 Mos. Through 11/30/2016**

|  | | $ | % | Per Available Room |
|---|---|---:|---:|---:|
| Rooms | | 160 | 160 | 160 |
| **Revenue:** | | | | |
| Room | $ | 1,433,653 | 96.6% | $ 8,960 |
| Telephone Revenue | $ | 40 | | |
| Other | $ | 49,672 | 3.3% | $ 310 |
| **Total Revenue** | $ | 1,483,365 | 100.0% | $ 9,271 |
| **Departmental Expenses** | | | | |
| Rooms Department | $ | 419,993 | 29.3% | $ 2,625 |
| Telephone Expenses | | 0 | 0.0% | $ - |
| Other Operating Department | $ | - | | $ - |
| **Total Department Expense** | $ | 419,993 | 29.3% | $ 2,625 |
| **Gross Operating Profit** | $ | 1,063,372 | 71.7% | $ 6,646 |
| **Undistributed Expenses** | | | | |
| Administrative and General | $ | 195,386 | 13.2% | $ 1,221 |
| Franchise Fees (Royalty) | $ | - | 0.0% | $ - |
| Marketing | $ | 10,415 | 0.7% | $ 65 |
| Energy Costs | $ | 214,854 | 14.5% | $ 1,343 |
| Repair and Maintenance | $ | 137,565 | 9.3% | $ 860 |
| Management Fees | $ | 72,000 | 4.9% | $ 450 |
| **Total Undistributed Expense** | $ | 630,220 | 42.5% | $ 3,939 |
| **Income Before Fixed Charges** | $ | 433,152 | 29.2% | $ 2,707 |
| **Fixed Charges** | | | | |
| Other | $ | 16,486 | 1.1% | $ 103 |
| Insurance Property | $ | 31,139 | 2.1% | $ 195 |
| Property Taxes | $ | 26,271 | 1.8% | $ 164 |
| **Total Fixed Charges** | $ | 73,896 | 5.0% | $ 462 |
| **Net Operating Profit** | **$** | **359,256** | **24.2%** | **$ 2,245** |

**Exhibit B**
**(Lender's Allowed Claim Balance Projection)**

## Lender's Allowed Claim Balance

**Estimated Effective Date**

Petition Date

Days of Petition Period Interest     -

| | | Amount Due |
|---|---|---|
| Principal Balance on Petition Date | $ | 3,713,187.00 |
| Interest Balance on Petition Date | $ | - |
| Default Interest Balance on Petition Date | $ | - |
| Late Charges | $ | - |
| Prepayment Consideration | $ | - |
| Expenses and Projective Advances at Petition Date | $ | - |
| **Loan Balance - Petition Date** | **$** | **3,713,187.00** |

Petition Period Interest & Expenses

| | | |
|---|---|---|
| Interest Accrual - Petition Date To Estimated Effective Date | $ | - |
| Default Interest - Petition Date To Estimated Effective Date | $ | - |
| Petition Period Expenses - To Date | $ | - |
| Petition Period Expenses (Remaining) - Estimate to Effective | $ | - |
| Total Petition Period Interest & Expenses | $ | - |

| | | |
|---|---|---|
| Less: Adequate Protection Payments Received | $ | 278,375.17 |
| Less: Other Payments Received | | |
| | $ | 278,375.17 |

| | | |
|---|---|---|
| Less: Anticipated Adequate Protection Payments to be Received | $ | 41,973.18 |
| Less: Other Payments Anticipated to be Received | $ | - |
| | $ | 41,973.18 |

| | | |
|---|---|---|
| **Loan Balance (Estimated) - Effective Date** | **$** | **3,392,838.65** |

**Exhibit C**
**(Lender's Value in Security Interest Calculation)**

**Value of Lender's Security Interest In Collateral**

|  | Effective Date |
|---|---|
| Value of Real and Associated Personal Property | $ 2,500,000.00 |
| Value of Personal Property | $ 100,000.00 |
| Value of Accounts Receivable on Effective Date | $ 13,506.51 |
| Value of Security Interest in Cash Collateral | $ 210,463.43 |
| Value of Other Collateral Interest(s) | $ - |
| Value of Other Balance Sheet Items | |
| Less: Sales, Distributions, Assignments, or Property Abandonment Included In Above Values | |
| Total Value of Available Collateral | $ 2,823,969.94 |
| | |
| Preceding Senior Priority Liens Existing Post Confirmation | |
| Less: Preceding Senior Priority Liens - Taxes | $ 121,934.62 |
| Less: Preceding Senior Priority Liens - Other | $ - |
| Total Senior Priority Liens | $ 121,934.62 |
| | |
| Value of Lender's Security Interest In Collateral | $ 2,702,035.33 |

## Lender's Claim Treatment

|  | Effective Date |
|---|---|
| Lender's Claim | $ 3,392,838.65 |
| Value of Lender's Security Interest in Collateral on Petition Date | $ 2,702,035.33 |
| Has the 1111(b) election been made? | |
| | |
| *Secured Claim* | *$ 2,702,035.33* |
| | |
| *Unsecured Claim* | *$ 690,803.32* |

**Exhibit D**
**(Debtor's Property Improvement Plan)**

**Property Improvement Plan**

*Immediate Repairs - F3, Inc. Engineering Report*

| Item | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|
| Repair and paint the exterior stairways, walkways, and safety railings on each building. | 16,000 | - | - | - | - | - | - | 16,000 |
| Remove and replace the roofs on Buildings 1 and 2 (approximately 21,672 square feet @ 4.50 per sf). | 97,524 | - | - | - | - | - | - | 97,524 |
| Subsequent to roof replacement, repair the ceilings in 15 second floor rooms in Buildings 1 and 2, paint the interiors, and replace any damaged floor coverings. | 7,500 | - | - | - | - | - | - | 7,500 |
| Overlay the parking lots and driveways with asphalt.  Restripe the fire lanes and parking striping. | 177,028 | - | - | - | - | - | - | 177,028 |
| ADA Modifications: Install pole-mounted signage for the handicapped accessible parking space and the five proposed accessible parking spaces. | 900 | - | - | - | - | - | - | 900 |
| **Total - Immediate Repairs** | **$ 298,952** | **$      -** | **$      -** | **$      -** | **$      -** | **$      -** | **$      -** | **$ 298,952** |

### On-Going Capital Budget Plan (Five Years Plus Two) - F3, Inc. Engineering Report

| Item | Units | Unit Cost | EUL | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Appliances (Lodge Rooms) | 18 | $1,000 | 10 | 2,571 | 2,571 | 2,571 | 2,571 | 2,571 | 2,571 | 2,571 | 17,997 |
| Floor and Window Coverings | 224 | $400 | 5 | 12,800 | 12,800 | 12,800 | 12,800 | 12,800 | 12,800 | 12,800 | 89,600 |
| HVAC (PTAC) Units | 70 | $800 | 15 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 56,000 |
| Bedding | 224 | $185 | 5 | 5,920 | 5,920 | 5,920 | 5,920 | 5,920 | 5,920 | 5,920 | 41,440 |
| Room FF&E | 112 | $1,500 | 10 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 168,000 |
| Life Safety Equipment | Net | $2,500 | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 17,500 |
| Lobby/Gameroom Building Roof | 4330 sf | $4.50 | 20 | - | - | - | 19,485 | - | - | - | 19,485 |
| Pool & Equipment | 1 | $10,000 | 5 | - | - | - | - | 10,000 | - | - | 10,000 |
| Common Area HVAC | 1 | $2,500 | 15 | - | - | - | 2,500 | - | - | - | 2,500 |
| Water Heaters | 2 | $5,000 | 15 | - | - | - | 5,000 | - | 5,000 | - | 10,000 |
| Exterior Paint | 1 | $16,000 | 5 | - | - | - | - | 16,000 | - | - | 16,000 |
| Asphalt Pavement Seal and Strip | 66150 sf | $0.20 | 5 | - | - | - | - | 13,230 | - | - | 13,230 |
| Roofing Flat (Buildings 3 & 4) | 14625 sf | $4.50 | 20 | - | - | 65,810 | - | - | - | - | 65,810 |
| **F3, Inc. Engineering Report - Subtotal** | | | | **55,791** | **55,791** | **121,601** | **82,776** | **95,021** | **60,791** | **55,791** | **527,562** |

### Other Items not included above - Janus Hotels & Resorts Report

| Item | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|
| Roof Replacement | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Parking Lot Replacement | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Wifi Installation | 15,000 | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | 15,000 |
| Shore-up Patio on Unit 272 | 4,000 | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | 4,000 |
| Flat TV Installations | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Mattress Sets | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Guest Room Furniture | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Exterior Painting | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| Landscaping | 15,000 | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | 15,000 |
| Guest Room Heating / AC Units | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | incl. above | - |
| **Other Items - Subtotal** | **34,000** | **-** | **-** | **-** | **-** | **-** | **-** | **34,000** |

### Additional Items and Contingency - Intown Properties (Debtor)

| Item | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|
| Miscellaneous/ Unidentified Items | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 35,000 |
| Contingency at 5% | 4,490 | 2,790 | 6,080 | 4,139 | 4,751 | 3,040 | 2,790 | 28,078 |
| **Additional Items and Contingency -Subtotal** | **9,490** | **7,790** | **11,080** | **9,139** | **9,751** | **8,040** | **7,790** | **63,078** |

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|
| **Total - Capital Expenses and Replacement Reserve** | $ 94,281 | $ 58,581 | $ 127,681 | $ 86,915 | $ 99,772 | $ 63,831 | $ 58,581 | $ 63,078 |
| *Per Unit* | $ 589 | $ 366 | $ 798 | $ 543 | $ 624 | $ 399 | $ 366 | $ 394 |

### Total Capital Expenses

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Total |
|---|---|---|---|---|---|---|---|---|
| **Immediate Repairs and Capital Improvements** | $ 393,233 | $ 58,581 | $ 127,681 | $ 86,915 | $ 99,772 | $ 63,831 | $ 58,581 | $ 888,592 |
| *Total Capital Expense Per Unit* | $ 2,458 | $ 366 | $ 798 | $ 543 | $ 624 | $ 399 | $ 366 | $ 5,554 |

**Exhibit E**
**(Melton Harrell's Plan Support Agreement Language)**

**Plan Support Agreement**

Melton Harrell will enter into a Plan Support Agreement to provide:

- $100,000 on the Effective Date of the Plan
- immediate payment any past due insurance premiums during the term of the Plan
- immediate payment any past due (un-appealed and undisputed) real estate or personal property taxes during the term of the Plan
- immediately pay any past due, undisputed, payments due to Panama Assets
- Contribute to the Debtor within 60 days of each June 30th anniversary of the Plan, such amounts that the Debtor would have held a minimum cash balance (excluding those amounts escrowed for real estate taxes or the equivalent pro-rata monthly portion of the upcoming real estate taxes) on June 30th of not less than $100,000 (less the Debtor's 30-day accounts receivable)
- Contribute to the Debtor in any year in which the Debtor's preceding calendar year has less than $374,000 of net operating income (all cash revenue less all cash expenses except mortgage payments) the upcoming payment of the administrative expense claim of Thomas Woodward (i.e., the determination of the contribution for the 2017 administrative payment will be made by looking at the net operating income for 2016 and so on).  Such contribution shall be made within ten days of each upcoming due date of the payment.
- Contribute $25,000 as a principal reduction toward the secured claim balance in exchange for a one year extension (1st extension after year 5) and $50,000 as a principal reduction toward the secured claim balance for a one year extension (2nd extension after year 6)

**Exhibit F**
**(Equity Holder's Equity Support Agreement Language)**

**Equity Support Agreement**

All equity interest holders shall agree to take no equity dividend, payment, distributions or loans (other than the reimbursement of normal operating or capital expenses) from the Debtor from the Debtor during the first three years of the Plan and only after the secured claim principal balance of Panama Assets has been reduced by at least 10% from its initial balance (or 20% should Panama Assets make the 1111b election).  In the alternative, the Debtor may make such payments after the third year if the Debtor can demonstrate through a Florida state certified commercial appraiser holding the MAI designation that the Panama Assets secured claim is at an 85% loan to value (based on the real estate and personal property of the Debtor).

**Exhibit G**
**(American Motel Management, Inc.'s**
**Management Company Support Agreement Language)**

**Management Company Support Agreement**

The management company of the Debtor, AMMI, shall agree to accrue all management fees due to it during the first year of the Plan, and one-half of such fees during the second, third, fourth and fifth year of the Plan.  Thereafter, nothing herein shall prohibit the payment of such accrued fees to the Management Company so long as:

- the Debtor is not in default with the terms of the Plan
- such payment would not result in the Debtor holding a cash balance of less than $100,000.

**Exhibit H**
**(Excess Cash Payment Definition)**

**Excess Cash Payment**

Within 60 days of the Excess Cash Calculation Date, Debtor will pay toward Panama Assets Secured Claim 25% of all Excess Cash of the Debtor.

Excess Cash Calculation Date means the later of the Plan's Effective Date or April 1st of each year beginning after the later of the third full year of the Plan or the completion/ implementation of all the anticipated capital improvements described in the Debtor's Property Improvement Plan, but not later than the fourth full year of the Plan.

Excess Cash means the total cash balances held by the Debtor including all bank accounts, investment accounts, and petty cash less:

- the Preferred Working Capital of the Debtor which shall be set an amount of $177,492
- All outstanding federal, county or state fees, taxes or impounds (including state sales tax payments or other amounts due to any entity of legislative authority) accrued or due
- All outstanding real estate tax payments accrued or due
- All outstanding insurance payments accrued or due
- One-Twelfth the Upcoming Real Estate Tax Payment times the number of months passed since the last real estate tax payment due date (Tax Escrow)
- Next 60 days Equivalent of Upcoming Real Estate Tax Payments
- Next 60 days of Insurance Payments
- Next Three Months of Scheduled Plan Payments
- One-Half of The Next Twelve Months of Capital Improvements and Replacement Reserves Provided for in the Property Improvement Plan (less any amount already performed plus any unspent amounts designated for previous periods in the Property Improvement Plan).  For example,
  - Upcoming 12 Months of Capital Improvements = $100,000
  - Amount would be $50,000 less:
    - Amount of the next 12 months already completed (completed in advance of the Property Improvement Plan) of $25,000
    - Plus, the Amount unspent from previous periods in the Property Improvement Plan) of $20,000

  Then such amount would be equal to $50,000 less $25,000, plus $20,000 equaling $45,000

**Exhibit I**
**(Net Cash Flow Calculation)**

**Net Cash Flow Calculation**

| | Source | Effective Date | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|---|---|
| | Trailing 12 - Nov. | | | | | | | | |
| **Net Operating Income** | 2016 | | 359,256 | 359,256 | 359,256 | 359,256 | 359,256 | 359,256 | 359,256 |
| **Add Back: Accrued Management Fees** | | | 78,000 | 39,000 | 39,000 | 39,000 | 39,000 | | |
| **Net Operating Income** | | | 437,256 | 398,256 | 398,256 | 398,256 | 398,256 | 359,256 | 359,256 |
| _Less_: **Capital Expenses and Replacement Reserves:** | | | | | | | | | |
| Immediate Repairs | F3 Engineer Report | | 298,952 | - | - | - | - | - | - |
| | F3 Engineer Report | | | | | | | | |
| Replacement Reserves | & Janus Report | | 89,791 | 55,791 | 121,601 | 82,776 | 95,021 | 60,791 | 55,791 |
| Miscellaneous and Contingency | Intown Properties | | 9,490 | 7,790 | 11,080 | 9,139 | 9,751 | 8,040 | 7,790 |
| Total -  Capital Expenses and Replacement Reserves | | | **398,233** | **63,581** | **132,681** | **91,915** | **104,772** | **68,831** | **63,581** |
| **Underwritten Net Cash Flow** | | | | | | | | | |
| **(Cash Flow Available for Plan Payments)** | | | **39,023** | **334,675** | **265,575** | **306,341** | **293,484** | **290,425** | **295,675** |
| | | | | | | | | | |
| **Plan Payments:** | | | | | | | | | |
| Thomas Woodward, Esquire, Administrative | Plan Terms | | 15,000 | 15,000 | 15,000 | 8,380 | - | - | - |
| Class 1: Panama Assets, LLC, Secured Claim | Plan Terms | | 199,114 | 199,114 | 199,114 | 199,114 | 199,114 | 199,114 | 199,114 |
| _DSCR_ | | | _0.20_ | _1.68_ | _1.33_ | _1.54_ | _1.47_ | _1.46_ | _1.48_ |
| Class 2a: Property Tax Claims - 2012, Secured Claim | Plan Terms | | 95 | 95 | 95 | 18,986 | 18,986 | - | - |
| Class 2b: Property Tax Claims - 2013, Secured Claim | Plan Terms | | 78 | 78 | 78 | 15,553 | 15,553 | - | - |
| Class 2c: Property Tax Claims - 2014, Secured Claim | Plan Terms | | 23,009 | 23,009 | 23,009 | - | - | - | - |
| Class 3: Trade Creditors, Unsecured Claim | Plan Terms | | 4,601 | 4,601 | 4,601 | 4,601 | 4,601 | - | - |
| Class 4: Panama Assets, LLC, Unsecured Claim | Plan Terms | | 5,872 | 5,872 | 5,872 | 5,872 | 5,872 | 5,872 | 5,872 |
| Total Plan Payments | | | **247,769** | **247,769** | **247,769** | **252,505** | **244,125** | **204,986** | **204,986** |
| _Overall DSCR_ | | | _0.16_ | _1.35_ | _1.07_ | _1.21_ | _1.20_ | _1.42_ | _1.44_ |
| **Net Cash Flow After Scheduled Plan Payments** | | | **(208,745)** | **86,907** | **17,806** | **53,836** | **49,359** | **85,439** | **90,689** |

Cash Balance / Working Capital

| | Effective Date | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 210,463 | 310,463 | 101,718 | 188,625 | 206,431 | 260,267 | 309,626 | 395,065 |
| **Effective Date Cash Contributions** | 100,000 | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| **Net Operating Income** | | 437,256 | 398,256 | 398,256 | 398,256 | 398,256 | 359,256 | 359,256 |
| **Less: Capital Expenses and Replacement Reserves** | | (398,233) | (63,581) | (132,681) | (91,915) | (104,772) | (68,831) | (63,581) |
| **Less: Plan Payments (Scheduled)** | 0 | (247,769) | (247,769) | (247,769) | (252,505) | (244,125) | (204,986) | (204,986) |
| **Cash Balance Forward** | 310,463 | 101,718 | 188,625 | 206,431 | 260,267 | 309,626 | 395,065 | 485,754 |
| | | | | | | | | |
| **Excess Cash Payment** | n/a | n/a | n/a | n/a | - | - | (5,862) | (26,412) |
| **Ending Cash Balance** | 310,463 | 101,718 | 188,625 | 206,431 | 260,267 | 309,626 | 389,203 | 459,342 |
| | | | | | | | | |
| **Recommended Minimum Working Capital** | $ 118,328 | $ 118,328 | $ 118,328 | $ 118,328 | $ 118,328 | $ 118,328 | $ 118,328 | $ 118,328 |
| Minimum Cash Surplus/Deficit | $ 192,136 | $ (16,610) | $ 70,297 | $ 88,104 | $ 141,939 | $ 191,298 | $ 270,875 | $ 341,014 |
| Cash to Minimum Working Capital Ratio | 2.6 | 0.9 | 1.6 | 1.7 | 2.2 | 2.6 | 3.3 | 3.9 |
| | | | | | | | | |
| **Preferred Working Capital** | $ 177,492 | $ 177,492 | $ 177,492 | $ 177,492 | $ 177,492 | $ 177,492 | $ 177,492 | $ 177,492 |
| Minimum Cash Surplus/Deficit | $ 132,972 | $ (194,101) | $ (107,195) | $ (89,388) | $ (35,552) | $ 13,806 | $ 93,384 | $ 163,522 |
| Cash to Preferred Working Capital Ratio | 1.7 | 0.6 | 1.1 | 1.2 | 1.5 | 1.7 | 2.2 | 2.6 |

**Exhibit J**
**(Case Prospective)**

| Projected Values | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Effective Date** | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** | **Year 6** | **Year 7** |
| | **4/1/2017** | **4/1/2018** | **4/1/2019** | **4/1/2020** | **4/1/2021** | **4/1/2022** | **4/1/2023** | **4/2/2023** |
| *Real Estate Value* | 2,500,000 | 2,650,000 | 2,800,000 | 2,950,000 | 3,100,000 | 3,250,000 | 3,350,000 | 3,450,000 |
| **All Collateral** | 2,823,970 | 2,984,970 | 3,145,970 | 3,306,970 | 3,467,970 | 3,628,970 | 3,733,970 | 3,833,970 |

| Projected Total Claim Balance to Value | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Effective Date** | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** | **Year 6** | **Year 7** |
| | **4/1/2017** | **4/1/2018** | **4/1/2019** | **4/1/2020** | **4/1/2021** | **4/1/2022** | **4/1/2023** | **4/2/2023** |
| **% Total Claims to Real Estate Value** | **144%** | **132%** | **122%** | **112%** | **103%** | **95%** | **90%** | **84%** |
| Total Panama Assets Claim to Real Estate Value | 136% | 126% | 117% | 109% | 102% | 95% | 90% | 84% |
| **Total Claims to Total Assets** | **127%** | **117%** | **108%** | **100%** | **92%** | **86%** | **81%** | **75%** |
| Total Panama Assets Claim to Total Assets | 120% | 112% | 104% | 98% | 91% | 86% | 81% | 75% |





**DEBTOR'S CASE PERSPECTIVE**

Allowed / 1111(b) Claim Amount = $3,392,839 / 1129 Effective Date Claim = $2,702,035

Interest Rate = 5.5% / Amortization = 25 Years / Term (Balloon) = 60 Months / Monthly Payment = $16,593

Payoff Amount at Maturity: $2,412,148 (Higher of the remaining 1111(b) Claim Amount of $2,397,267 or the remaining 1129 Claim Amount of $2,412,148)

Effective Date Collateral Value begins at $2,823,970 and is increasing by 6.00% per year / Plan Provides total Capital Improvements of $888,592 / Collateral Value at Maturity = $3,586,470

*The Collateral Value exceeds the Payoff Amount in month 20 and the 1111b Claim Balance falls below the 1129 Claim Balance in month 59*